McIlvaine, C. J.
The questions which control this ease, arise under the statute providing for the recording of deeds, etc.
The land, which the plaintiff seeks to recover, being a sixteenth part, or 9.24 acres, of a tract containing 149.85 acres, was conveyed, in 1836, by Comstock to Raymond and Wade; but the deed of conveyance remaining unrecorded until 1853, the defendants claim that their title, derived from the same source, although at a later date, being evidenced by deeds duly executed prior to 1853, is protected by that statute.
The provisions of the statute (S. & C. 467), applicable to the case before us, are as follows:
“ Sec. 8. That all other deeds and instruments of writing for the conveyance or incumbrance of lands, etc., shall be recorded within six months from the date thereof; and if such deed, or other instrument of writing, shall not be so recorded within the time herein prescribed, the same shall be deemed fraudulent, so far as relates to any subsequent bona fide purchaser, having, at the time of making such purchase, no knowledge of the existence of such former deed, or other instrument of writing.”
Under this statute, a subsequent purchaser will not be protected against a prior unrecorded deed, unless the purchase be made in good faith, for a valuable consideration, and without knowledge at the time, of the existence of the former deed. The word “purchaser” is not here used in its broadest sense, including every person who acquires lands otherwise than by descent; but in its ordinary and *414 original meaning, whereby it is signified that the acquisition was upon a valuable considei’ation.
It is claimed, in the first place, by plaintiffs in error, that a purchaser at a sale of unoccupied lands, under .an execution, is not within the protection of this statute.
Lands may be seized in execution and sold, whether occupied or unoccupied, and if occupied, whether by the judgment debtor or another; but whether the purchaser takes any thing by his purchase, depends, ordinarily, upon the fact that the judgment debtor had a legal estate therein. So* at a private sale, if the grantor owns the lands which he undertakes to convey, whether occupied or Unoccupied, the title will pass ; but, if the grantor has no interest, the purchaser takes nothing by the purchase. Rut, under the registry act above quoted, where the judgment debtor, in the first case put, or the grantor, in the second, is upon the public records, the apparent owner, whether the lands be in his occupancy or unoccupied, a prior purchaser from him, who has neglected to have his deed recorded within six months from its. execution, shall not gainsay the title of a subsequent purchaser in good faith, and without knowledge of the pi’ior deed at the time of his purchase. The statute protects purchasers at judicial sale, as well as at private sale. Whether the rule would be different if the sale purported to be only of the interest of the debtor or grantor, in the premises, we need not'say, as, in the case before us, it was the corpus of land that was sold in each instance.
It is also claimed that the court below erred in charging the jury, that knowledge of the prior deed, which would deprive the subsequent purchaser of the protection of the statute, must be knowledge at the time of the purchase, and, although he might have had knowledge at a previous date, if the fact had been forgotten and was not' known at the time of the purchase, he would, nevertheless, be protected ; and, in refusing to charge, that if the subsequent purchaser was shown to have had knowledge of the prior unrecorded deed some nine years before the purchase, then *415 it is devolved upon him to show that such knowledge had escaped him at the time of -his purchase. The court did charge, however, upon this subject, as follows :
“The plaintiffs, on the other hand, allege that at the time these deeds were made to Russell 0. Daniels for Willard J. Daniels, the latter in fact knew of the existence of the prior unrecorded deed to Raymond and Wade. And one of the questions for you to determine is, whether he did, at the time he made the purchase under those sheriff’s sales, and at the time he took his deed from Comstock, know of this prior sale to Raymond and Wade., And evidence has been given tending — and perhaps it is not too much to say, strongly, tending to prove that, at the time the sale was made to Raymond and Wade, Daniels did know of it; did know there was such a sale. There is, however, evidence on the other side, tending in another direction. It is claimed by the plaintiffs, that if they shall succeed in satisfying you that he knew of it at the time of the sale, the presumption is that he knew of it at the time he took his deeds, and that the burden of proving that he forgot it is upon the defendants. But I do n’t so understand the case. The burden of proving that at the time Daniels took these conveyances — about nine years after the original sale to Raymond and Wade was made — he then knew, and had in his mind a consciousness, that the property, of which he was then taking a conveyance, was previously sold to Raymond and Wade; the burden of making such proof rests upon the plaintiffs. And you must be satisfied, to avoid the effect of these conveyances at the time of these sheriff’s sales, and of the conveyance from Comstock to Daniels of an undivided one-eighth, that the latter then knew and remembered that part of the property, acquired by those conveyances, had previously been conveyed by Comstock to Raymond and Wade. And I won’t recapitulate the evideuce, or advert to it further, but will simply repeat that the question is, not what the evidence shows his knowledge to have been at the time Raymond and Wade took their deed; but the question is, *416 what did. Daniels know at the time he took his deeds from the sheriff and from Comstock. And unless you can find that he then knew of the prior conveyance, the plaintiffs can not avoid the effect of these deeds to him as against this unrecorded deed.”
The language of the statute is, “ Having, at the time of making such purchase, no knowledge of the existence of such former deed.” It appears to us, that all the statute requires of the subsequent purchaser is honesty of purpose at the time of making the purchase. It is true, that proof of such knowledge at a date anterior to the purchase tends to prove its existence at the time of purchase. Such is unquestionable the inference, but the streugth of the inference is weaker or stronger according to circumstances. By the lapse of many years, it is weakened or may cease to exist altogether. The circumstances under which the knowledge was acquired, whether or not it would likely make a lasting impression, should also be considered. We do not think there was any shifting of the onus probandi; but it was for the jury, upon the whole testimony to say whether or not such knowledge existed at the time of purchase. If the circumstances before the jury rebutted the presumption that such knowledge continued, they should so find; and we think that the matter was substantially put to the jury in this light.
Upon the face of the several deeds offered by the defendants in support of their chain of title, there was an acknowledgment, by the grantor in each, of the receipt of a valuable consideration, but no other or further proof was offered as to the payment of a consideration for either of the conveyances.
Now, if either of the deeds making up the defendant’s chain of title between Comstock, the common source, and the defendants, is shown to be within the requirements of the statute, then the protection of the statute must be accorded to them; but if neither of them was of that character, the prior unrecorded deed from Comstock to Ray *417 monel and “Wade, upon which the plaintiffs rely, must prevail.
Two questions, therefore, arise: 1. Upon whom rests the burden of proof? 2. "What is the effect of the acknowledgment of payment appearing upon the face of the deeds in defendants’ chain of title ?
As to the first. It having been shown that the plaintiffs held under a prior, though unrecorded deed, from Com-stock, the burden was upon the defendants to show that the plaintiffs’ deed was “fraudulent” as to them, which, under the statute, could only be done by proving that they (or some one in their chain of title from Comstock) were bona fide purchasers, that is, for value. And when such-proof is made, namely, the payment of a valuable consideration, the presumption arises that they were bona fide purchasers, having at the time of making the purchase no knowledge of the existence of the prior unrecorded deed. The rule in such case is entirely analogous to that which obtains in relation to commercial paper, and rests on the same principle. The indorsee of negotiable paper before due must prove the payment of a valuable consideration as-soon as it is shown that the instrument was made without consideration, or was obtained by fraud.
The holder of a prior unrecorded deed, independent of the statute, is the owner of the land, both in law and equity, and must prevail over a subsequent vendee, unless-the former deed appears tobe “fraudulent,” in the language-of the statute. There is no presumption that it is fraudulent. The neglect to have it recorded within six months does not raise such presumption, for the statute provides “that such deed . . . may be recorded after the expiration of the time herein prescribed, and, from the date-of such record, shall be notice to any subsequent purchaser.”
It is said in some of the books that the reason of the rule-requiring the holder of the later deed to prove the payment of a valuable consideration is found in the fact that the *418 .knowledge and means of proving it are more reasonably and naturally in his possession, and the further reason that it is more difficult to prove the negative than the affirmative of a proposition. However this may be, it appears to me that, from the very nature of the controversy which ■arises between the owner of the prior and the owner of ■the later deed, under this statute, the latter is the attacking •party, and must, in order to defeat the older title, show that '•it is fraudulent, within the meaning of the statute.
As to the second question : What effect should be given to recital of payment in the deed? No one disputes, that as between the parties and privies, an acknowledgment of the receipt of payment in a deed is prima facie evidence of the payment. But it is prima facie only as between them. The question here, however, is: What effect should be given to such recital as against a person claiming under an ■older and adverse title ? It is a doctrine as old as the common law, that the declarations of a grantor, made after he has parted with his title, can not be given in evidence to defeat it. Is the proposition under consideration any thing else? As to deeds subsequent to that from Comstock, in defendants’ chain of title, the objection is still more palpable. It is said that these deeds were admissible in evidence to prove the defendants’ chain of title, and therefore all their contents were in evidence — the recepi as well as the ■dedi. In one sense, this is true. For the purpose of proving title in defendants, the deeds were properly admitted. But the payment of a consideration was not necessary to the transmission of title; therefore the recital of payment was not necessary for that purpose. The statute, in cases -of bargain and sale, has made deeds in writing the only evidence of the transfer of title; but it has not made them the only, or any, evidence of the payment of the purchase-money ; and therefore, I take it, a receipt for the purchase-money contained in a deed of conveyance is not admissible to prove payment, where a written receipt outside of the ■deed would not be admissible; and hardly any one would contend that a receipt for the purchase-money written on a *419 ■separate paper would be prima facie evidence as against a person not a party to it.
It has been suggested that while the owner of the subse•quent title might be required to prove the consideration paid by himself, if such payment were relied on, that he .should not be required to prove the payment of a consideration for a previous deed in his chain of title. That he might well and safely rely upon the recital in such previous Reed. In answer we say, that if a valuable consideration were paid by himself, no proof of a consideration for previous conveyances need be made; and if no consideration were paid by himself, the question would then be between .a donee and the owner of a title unquestionably good, except for the statute; and, in such case, to hold that the recital in a former deed is prima facie evidence of the fact of payment, would be the exact equivalent of holding that the law presumes in favor of a party who is admitted to be without equity in himself, a fact which would not be presumed if such admission were not made.
It is also claimed that the rule above indicated would, by lapse of time and consequent loss of testimony, deprive ■the “subsequent bona fide purchaser” of the protection the statute intended for him. In answer to this objection, it is ■enough to say that, by lapse of time, testimony tending to prove the payment of a consideration is not more likely to be lost than the testimony tending to prove that no consideration was in fact paid. The law is no “ respector of persons.” It has no more regard for one than the other party to a suit.
In its charge to the jury, the court of common pleas, .among other things, instructed as follows :
“ In regard to the purchase-money, I am inclined to think that, prima facie, the deeds themselves are to be taken as evidence of the payment of the purchase-moneyT and that, in the absence of proof to the contrary, you will take that as proof of the payment of the purchase-money.”
In this charge, we think there was error to the prejudice •of plaintiffs, in so far as the defendants’ title depended upon *420 either the quitclaim deed from Comstock to Russell C. Daniels, executed in 1846, or the quitclaim deed from Com-stock and Daniels to McBain in 1852. Not that we have any doubt that a subsequent bona fide purchaser, without notice, under a quitclaim deed like that before us, is protected by the statute, but because the recital of payment of purchase-money contained in those deeds did not prove or tend to prove, as against the plaintiffs, that any valuable consideration was paid.
With regard, however, to the deeds executed by the sheriff upon judicial sales to Russell C. Daniels, we think the instruction was right. Such deeds could only be made upon payment of at least two-thirds of the appraised value of the lands, and upon confirmation of sale by the court, as is provided by statute regulating such sales; and the presumption being that public officers perform their duties in the mode prescribed by law. We think a deed, executed by a sheriff, upon a sale approved by the court, and under an order of court, in which the receipt of the purchase-money is acknowledged, is 'prima facie evidence that the purchase-money was paid.
The case then stands thus : At the time of levies and sales, there was in Comstock, subject to seizure, the following undivided interests in said River tract 5, 9.24 acres by this original title, .79 of an acre by reconveyance from McKay, and 9.24 embraced in the unrecorded deed to Raymond and Wade, making in all 19.27 acres. Of this quantity, 17 acres were sold under the two executions, leaving in the plaintiffs, or those under whom they claim, 2.27 acres, which, under this view of the case, they were entitled to recover, and to which the defendants had no appearance of title, except by virtue of said quitclaim deeds.

Judgment reversed and cause remanded.